## Hageman *et al. versus* Salisberry *et al.*

1. A bond with warrant contained in the *condition* a waiver of inquisition and condemnation. The bond and a declaration were filed; the same attorney who filed the declaration appeared for the defendant in the ordinary way and confessed judgment "by virtue of warrant." All these proceedings appeared on the docket. Land was sold under this judgment on a fi: fa. *Held*, that the waiver was part of the record and the title passed by the sale.

2. Evidence that the signature of the defendant to the bond and warrant was a forgery was inadmissible in ejectment for the land.

3. In contemplation of law a judgment upon warrant is the act of the court.

4. If judgment be confessed in a suit under terms, they are part of the record of the judgment and qualify it.

5. If a judgment be confessed by an attorney, neither its regularity or his authority can be questioned in a collateral action.

6. Buehler *v.* Rogers, 18 P. F. Smith 9 ; Hope *v.* Everhart, 20 Id. 231, distinguished.

October 16th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the District Court of *Allegheny county:* No. 91, to October and November Term 1872.

This was an action of ejectment, brought July Term of 1869, by Charles Salisberry and others, heirs of Alexander Rowland, deceased, against William Hageman and others, for a lot of ground in South Pittsburg.

The cause was tried November 17th 1871, before Kirkpatrick, J.

The plaintiffs gave evidence, showing the title to the lot in Alexander Rowland, his death, and that the plaintiffs were his heirs at law.

The defendant gave in evidence a bond with warrant of attorney, dated December 1st 1856, from Alexander Rowland to W. O. Leslie, conditioned for the payment of $300 with interest, "hereby waiving inquisition and condemnation of all real estate, and appraisement on all personal property, chattels, real or personal, taken in execution, issued on any judgment obtained by virtue of this bond; and further, to pay all expenses of collection, including attorney's commission," &c.

The warrant was in the usual form, empowering " any attorney of any court, &c., to appear for me, and after one or more declarations filed for the above penalty, thereupon to confess judgment," &c.

A declaration was filed on the bond by T. J. Bigham, Esq., as attorney for plaintiff. Also a confession of judgment filed December 17th 1866, as follows, viz. :—

" By virtue of a warrant of attorney, authorizing me thereto, I appear for the defendant above named, and confess judgment against him for the sum of six hundred dollars, with costs of suit, release of errors ; to be released on payment of three hundred

[Hageman v. Salisberry.]

dollars, with interest and attorney's commission, and with leave to take out execution for said sum, with interest from the 1st day of December 1856.   Hereby waiving inquisition and condemnation on all real estate and appraisement on all property, real or personal, taken in execution by virtue hereof.

" T. J. BIGHAM,<br>" Attorney for defendant."

Also the following docket entries :—

| " W. O. Leslie<br>v.<br>A. Rowland. | 164, January Term 1857.   D. S. B., $600.   Real debt $300.   Interest from December 1st 1856. |

" And now, December 17th 1856, comes T. J. Bigham, Esq., and confesses judgment in favor of the plaintiff, W. O. Leslie, against the defendant, A. Rowland, for the sum of six hundred dollars, to be released on payment of three hundred dollars on the 1st December 1856, with interest from said December 1st 1856, with waiver of inquisition, and condemnation and appraisement, and with attorney's commission, &c.

" JOHN BIRMINGHAM, Pro."

| " W. O. Leslie<br>v.<br>A. Rowland. | 136, January Term 1857.   Fi. fa. on 164, January Term 1857. Penalty $600.   Real debt $300. Interest from December 1st 1856. |

" Inquisition and condemnation waived.
" Appraisement waived."
*Return :*
" Levy made on the real estate described in the schedule annexed.   Sale advertised according to law, and property sold January 26th, to Wm. O. Leslie, Esq., for $32, and applied to costs of this writ.   So answers       · R. PATTERSON, Sheriff."

Also sheriff's deed to Leslie, acknowledged January 31st 1857. Deed March 15th 1858, Leslie to Mary Ann Daley.   And deed September 29th 1866, Mary Ann Daley to the defendants.

The plaintiffs in rebuttal, under objection and exception, gave evidence that Rowland resided in Illinois in 1856 and 1857, that during those years he was a paralytic and helpless, and was unable to write his name; his memory was good, and he talked sensibly.   He died in the spring of 1857.

The defendants then called Mr. Bigham, who testified, that from the mere signature he could not tell whether the signature to the bond was Rowland's writing.   Several papers were shown to witness which had been signed by Rowland, and which had been in

[Hageman *v.* Salisberry.]

the possession of the witness. He then said, that from all the circumstances surrounding the case, he believed the signature was Rowland's.

There was other evidence tending to show that the signature to the bond was genuine.

The defendants offered evidence that Leslie and his successors in title had made expensive improvements on the premises. The offer was objected to by the plaintiff, rejected by the court, and a bill of exceptions sealed.

The plaintiffs' point which was affirmed was :—

"If the jury find from the evidence that the bond containing a waiver of inquisition and condemnation, filed at No. 164, January Term 1857, was not executed by Alexander Rowland, the defendant, the sheriff's sale thereunder being on a fi. fi., without inquisition and condemnation, did not divest the title of said Rowland, and the purchaser at such sale could convey no title to those claiming under him, and their verdict must be for the plaintiffs."

The following are defendants' points, with their answers :—

2. " The regularity of the proceedings on which the sheriff's title is based, as apparent on the face of the record, affords a good title to innocent parties claiming under the sheriff's vendee, without notice of any latent defects in the judgment, even if there were any such."

The court answered :—

" Affirmed. But it is not so conclusively good that it may not be attacked and overcome by a better. Whether this has been done by these plaintiffs we leave it to the jury to say, from all the evidence in the cause."

4. " Even if the judgment on which the sheriff's sale took place were improper, and were reversed or set aside as being founded upon a forged instrument, the land which passed by the sale and now in the possession of innocent holders for value, cannot be restored, nor the sheriff's sale avoided, though the plaintiffs in such case might be entitled to restitution of the money for which the lands were sold at such sheriff's sale."

The court answered :—

" This is equivalent to asking us to say that the plaintiffs cannot recover in this action ; it being an ejectment for the recovery of the possession of the specific property, we decline to do so, having already told you, upon evidence satisfactory to yourself showing a better title, that they can ;  the point is therefore, as presented, refused."

The verdict was for the plaintiffs.

The defendants took a writ of error. They assigned for error—

1 and 2. Admitting evidence to disprove the execution of the

[Hageman *v.* Salisberry.]

warrant of attorney by Rowland and to attack the integrity of the bond.

4. The answer to the plaintiffs' point.

5, 7. The answers to the defendants' second and fourth points.

*J. L. Koethen* and *J. H. Bailey*, for plaintiffs in error.—Purchasers depend on the records, and they are not bound to look beyond them to discover any latent frauds, of which they have no notice and to which there is nothing to direct their attention. They can only be affected by notice, actual or legal: Hoffman *v.* Strohecker, 7 Watts 90. A judgment cannot be impeached in a collateral action: Kean *v.* McKinney, 2 Barr 30; Withers *v.* Haines, Id. 435; Morris *v.* Galbraith, 8 Watts 166; Warder *v.* Tainter, 4 Id. 270; Hays *v.* Shannon, 5 Id. 550; Hoffman *v.* Coster, 2 Whart. 474; Tarbox *v.* Hays, 6 Watts 401; Hazelett *v.* Ford, 10 Id. 102. An attorney duly authorized by his client has the power to bind the latter by a waiver of inquisition and condemnation: Lynch *v.* Commonwealth, 16 S. & R. 369; Flanigen *v.* Philadelphia, 1 P. F. Smith 493. Where an attorney appears without authority and confesses judgment, the remedy is against him, or in a proper case an application may be made to open the judgment: Cyphert *v.* McClune, 10 Harris 197; Braddee *v.* Brownfield, 4 Watts 475. The acts of the attorney will be deemed regular, though a want of authority be subsequently shown: Compher *v.* Anawalt, 2 Watts 490; Evans *v.* Meylert, 7 Harris 410.

*Kerr & Guthrie*, for defendants in error.—A sheriff's sale of real estate on a fi. fa., without inquisition or condemnation, is void: St. Bartholomew's Church *v.* Wood, 11 P. F. Smith 96, and cases cited in the opinion; Hope *v.* Everhart, 20 P. F. Smith 231. An attorney at law has not power to waive an inquisition: Macbeath *v.* Cooke, 4 Bing. 578; Lusk *v.* Hastings, 1 Hill 659; Stackhouse *v.* O'Hara, 2 Harris 88; Hadden *v.* Clark, 2 Grant 108.

The opinion of the court was delivered, November 10th 1873, by

MERCUR, J.—The case has been twice argued. It has received that consideration to which it was entitled. Seven errors have been assigned, but the whole case depends upon whether the waiver of inquisition is a part of the record of the judgment.

The bond contains an express waiver of inquisition, and of condemnation of all real estate which may be taken in execution issued on any judgment obtained thereon. This waiver is a part of the condition. It precedes the warrant which authorizes an attorney to confess judgment. All the terms and conditions are part and parcel of one and the same instrument. The obligation is an entirety. The warrant of attorney is an authority to confess judgment upon the whole instrument. That undoubtedly means,

[Hageman *v.* Salisberry.]

according to all of its terms, conditions and stipulations. They clearly express and with equal force declare the sum to be paid, the waiver of inquisition and the condemnation of the obligor's real estate.

Upon this instrument, so written, the judgment was recovered and the inquisition and condemnation were waived. A declaration in the usual form was filed. An attorney appeared for the defendant and executed a written confession of judgment. He therein declared that he did it by virtue of a warrant of attorney authorizing him thereto. In that confession he recited substantially all the conditions of the obligation. With it he filed the original bond, showing full authority for his act. The prothonotary entered upon the docket the filing of the *narr.*, the appearance of the attorney and his confession of judgment, with the waiver of inquisition and condemnation. When the fi. fa. issued, the prothonotary endorsed thereon " inquisition and condemnation waived."

Thus in *fact* the waiver of inquisition and condemnation was blended and interwoven with the record of the judgment. Was it not so in law ?

The waiver was a part of the contract. As such it was as obligatory upon the maker as his agreement to pay the sum therein stipulated. He was bound to the fulfilment of all its terms. Suppose the instrument had not contained any warrant authorizing a confession of judgment, but was otherwise the same, with its waiver of inquisition and condemnation, and suit had been brought upon it ; a full copy of the instrument had been set forth in the declaration, the original filed in the case and judgment taken thereon upon a verdict, could it be seriously contended that the waiver was not a part of the record of the judgment ? The record of an action in a court founded on common law, consists of the writ, declaration, pleas and judgment: Erb *v.* Scott, 2 Harris 20. In case execution should be issued upon such a judgment, and land be levied upon, I cannot conceive it would be necessary to hold an inquisition thereon. If the legal effect of such a judgment, duly entered upon a verdict regularly obtained, would be to dispense with the holding of an inquisition, then like effect must be given to the record of this judgment, regularly entered upon a warrant of attorney. In contemplation of law, a judgment on warrant of attorney is as much an act of the court as if it were formally pronounced on *nil dicit* or a *cognovit*, and till it is reversed or set aside, it has all the qualities and effect of a judgment on verdict: Braddee *v.* Brownfield, 4 Watts 474. The judgment by the prothonotary, under a power contained in the instrument, is a judicial act, and may be entered by him under the Act of 1806, or may be confessed by an attorney independently of that act: Cook *v.* Gilbert, 8 S. & R. 568 ; Flanigen *v.* City of

[Hageman v. Salisberry.]

Philadelphia, 1 P. F. Smith 491; St. Bartholomew's Church v. Wood, 11 Id. 96. The rule may be so qualified by the authority of Banning v. Taylor, 12 Harris 289, as to require the warrant of attorney to be filed with the appearance, in order to give full effect to the judgment and to prevent the issuing of a certiorari to bring up the warrant, upon a suggestion of diminution of record. In the case now under consideration that contingency does not arise.

When a judgment is recovered according to the terms and conditions of a written obligation for the payment of money, and those terms and conditions expressly either limit the lien of any judgment that may be recovered upon it or which waive the benefit of all laws exempting property from levy and sale on any execution, or which waive the right of inquisition upon the delinquent's real estate, and in the entry of the judgment this is set forth upon the docket, it must be held to be a part of the record of the judgment. Hence it was ruled in Stanton v. White, 8 Casey 358, that effect should be given to a stipulation in bond and warrant of attorney, restricting the lien of the judgment to be entered thereon to certain designated lands. So in a pending suit, if judgment is confessed and entered in pursuance thereof, the terms and conditions of the confession enter into and form a part of the record of the judgment, modifying and qualifying its effect.

In Coleman v. Coleman, 7 Harris 100, it was held that an agreement, and the entry of judgment thereon, in a pending action of partition, stipulating that certain ore-banks and mine-hills should remain undivided, became the judgment of the court. By that judgment and decree, said Mr. Justice Woodward, in giving the opinion of the court, the covenant was inwrought into the titles of the parties, so that it should remain firm and stable for ever.

The cases of Buehler v. Rogers, 18 P. F. Smith 9, and Hope v. Everhart, 20 Id. 231, have been cited as establishing the doctrine that the inquisition is no part of the record of the judgment. The first of these is clearly distinguishable from the present case, in that there was no agreement, either before or at the time of the rendition of the judgment, to waive the inquisition. The allegation was that an inquisition had been held by the sheriff, but the fi. fa. and return thereon could not be found, and it was uncertain upon what land the writ had been levied. The case of Hope v. Everhart also differs. There the judgment was entered by the prothonotary under the Act of 1806, without the intervention of an attorney. The reasoning of Mr. Justice Williams is predicated mainly of that act, and the duty and power of the prothonotary under it. The case wholly lacked the superadded appearance of an attorney for the defendant and his confession of judgment therefor, expressly waiving the inquisition and condemnation. That the authority of an attorney is more extensive in Pennsylvania

[Hageman *v.* Salisberry.]

than in other countries, and that his act binds the client, is recognised by numerous cases: Coxe *et al. v.* Nicholls, 2 Yeates 546; Reinholdt *v.* Alberti, 1 Binn. 469; Lynch *et al. v.* Commonwealth, 16 S. & R. 368; Wilson *v.* Young, 9 Barr 101; Cyphert *v.* McClune, 10 Harris 195; Flanigen *v.* City of Philadelphia, 1 P. F. Smith 491. If a judgment be confessed by an attorney, neither his authority nor the regularity of the judgment can be inquired into in a collateral action. Where he appears without authority and confesses judgment, the remedy is against him, or in a proper case the court in which it was entered may open the judgment: Cyphert *v.* McClune, *supra;* Evans *v.* Meylert, 7 Harris 402. The prothonotary, who is the maker and keeper of the records, acts under the supervision of the court. His record is the record of the court, made by the proper officer, and another court cannot say whether the record made by the proper officer was properly made or not. The court of which he is the officer has the sole jurisdiction to examine this, and to correct it if found wrong: Hoffman *v.* Coster, 2 Whart. 453.

While it is contended that a sale under this fi. fa. is bad, yet it is conceded if it had been made upon a vend. exp. it would be good. We are unable to see much force in the distinction, as the record shows the waiver. In either case the judgment would have supported the execution, and the record would have shown the authority to sell. There is nothing in the case going to show fraud in the plaintiff in the judgment, nor to impeach the title of the defendants below as good-faith purchasers. The very able argument of the counsel for the defendant in error has failed to satisfy us that the title acquired by a good-faith purchaser upon the faith of the records shall not be sustained. We think the learned judge erred in admitting the evidence contained in the first and second assignments of error, as well as in affirming the point presented in the fourth. The court should have affirmed the point covered in the fifth and seventh assignments. We discover no other error in the record.

Judgment reversed, and a *venire facias de novo* awarded.